# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

ANDREA BOXILL,

        Plaintiff,                         Case No. 2:16-cv-126
                                                  JUDGE EDMUND A. SARGUS, JR.
     v.                                     Magistrate Judge Chelsey M. Vascura

JAMES P. O'GRADY,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant James P. O'Grady's Motion for Summary Judgment (ECF No. 107), Plaintiff Andrea Boxill's Memorandum in Opposition (ECF No. 113), and Defendant's Reply (ECF No. 114). For the reasons that follow, the Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

### A. Factual Background

Plaintiff Andrea Boxill, an African-American woman, began her employment at the Franklin County Municipal Court ("FCMC") in 2004. (Boxill Decl. II at ¶ 5, ECF No. 110-1.) She was hired as the Specialty Docket Coordinator for the newly created Mental Health Court Program. (*See id.* at ¶¶ 4–7.) Boxill's direct supervisor was the judge assigned to the Mental Health Court, Scott VanDerKarr. (*See id.* at ¶ 11.) At that time, James O'Grady was Judge VanDerKarr's bailiff. (*Id.* at ¶ 4.) Boxill and O'Grady worked together from 2004 through 2007. (VanDerKarr Dep. I, ECF No. 104, PageID 2137.) Boxill avers that O'Grady made frequent sexually vulgar statements and racially derogative comments during this time. (*E.g.*, Boxill Dep., ECF No. 91, PageID 795, 798, 804, 808.) O'Grady resigned from his position in 2007 after passing

1

the bar exam and finding employment as an attorney. In the ensuing years, Boxill oversaw the continued expansion of the Specialty Docket.

Four years later, Boxill was still working at the FCMC when O'Grady took the bench in November 2011. By that time, she was managing a full staff and reporting directly to both Judge VanDerKarr and Judge Herbert. Boxill worked on the 12th floor, as she had before, while Judge O'Grady had his chambers and courtroom on the 14th floor. (Schmidt Decl. at ¶ 14, ECF No. 110-2.)

Boxill testified that, during this period, Judge O'Grady made comments of a sexual nature that made her feel uncomfortable and unsafe. (Boxill Dep., ECF No. 91, PageID 938.) One example of this occurred around 2012 in the common area of Judge O'Grady's and Judge Peeples' shared chambers. (*Id.* at PageID 938–39.) Boxill was there waiting to get a document signed by Judge Peeples. (*Id.* at PageID 938.) Judge O'Grady was talking to two bailiffs and another person about two defense attorneys who had recently ended a romantic relationship. Boxill avers that Judge O'Grady commented that the male attorney knew the female attorney "was a freak when he got with her," that she was "a wild partier and loved to sleep around," and that "[h]e's got to figure out how to get rid of her." (*Id.* at PageID 939.) In a similar instance that also occurred while Boxill was waiting for a signature, Judge O'Grady was in another conversation about who was dating whom. (*Id.* at PageID 942–43.) In her deposition, Boxill testified that Judge O'Grady made the comment that he "would consider sleeping with" a particular bailiff. (*Id.* at PageID 943.)

Also during this time period, Boxill testified that on a regular basis she experienced and observed demeaning and abusive language from Judge O'Grady. (*Id.* at PageID 848.) For example, Boxill contends that abusive language, that was commonplace when O'Grady was a bailiff, was utilized repeatedly when he took the bench as a judge:

2

> Q.·····Okay. So [as a judge, O'Grady continued to] use of the term "fuck," that was commonplace with Bailiff O'Grady?
>
> A.·····Yes.
>
> Q.·····"Whore"?
>
> A.·····Yes.
>
> Q.·····"Bullshit"?
>
> A.·····Yes.
>
> Q.·····"Smoking hot" to describe a woman?
>
> A.·····Yes.

(Boxill Dep., ECF No. 91, PageID 1012–13.)

In February 2013, Boxill avers that Judge O'Grady said to her: "Look at how you dress. You disgust me." (*Id.* at PageID 848, 851.)  Boxill testified that in the "open hallways in the Municipal Court" and in front of a defendant, Judge O'Grady "called me a fuck -- a fucking idiot and asked me what the fuck is wrong with [me]." (*Id*. at PageID 940.)

Boxill further avers that coordinators began reporting that they did not feel comfortable going to Judge O'Grady's courtroom. (Boxill Dep. at PageID 843; Schmidt Decl. at ¶ 15, ECF No. 110-2.)  Boxill provides evidence of one example of the reports Boxill received from Shanequah Gaiters. (Boxill Dep. at PageID 846–47.)  Gaiters came to Boxill, visibly upset. (*Id.*)  She informed Boxill that she had secured the consent of a female defendant with a history of arrests for prostitution for referral to the human-trafficking program. (*Id.*)  The case was assigned to Judge O'Grady. (*Id.*)  Gaiters went to his courtroom to complete the referral. (*Id.*)[1]  Declining to sign the referral, Judge O'Grady allegedly stated in open court that "this program is a fucking joke.

---

[1] As the last step in the process of transferring cases to the Specialty Docket programs, a coordinator would take paperwork to the assigned FCMC judge for review and a signature. (Boxill Dep., ECF No. 91, PageID 842.)

3

This woman is a whore, she's always going to be a whore, I do not want to sign this entry." (*Id.*) After that, Gaiters told Boxill she no longer wanted to appear before Judge O'Grady. (*Id.*)

Another coordinator, Ashley Schmidt, testified that Judge O'Grady's "conduct made [her] very uncomfortable [as he] tri[ed] to embarrass [her]" because "[h]e was demeaning, condescending to women, and would question a woman's ability." (Schmidt Decl. at ¶ 15, ECF No. 110-2.) Schmidt asked a male coordinator to take her referrals to Judge O'Grady because he did not treat the man "in the same manner." *Id*. Later, Boxill began taking the referrals to Judge O'Grady herself because of complaints similar to those submitted by Schmidt and Gaiters. (Boxill Dep. at PageID 841–42.)

Judge VanDerKarr testified that in this time period, "almost every single [Specialty Docket staffer] was telling me the way he [O'Grady] spoke to them and addressed them, they felt very intimidated, didn't even want to go up to that courtroom anymore." (VanDerKarr Dep. II, ECF No. 105, PageID 2277.)

Boxill testified that because of several confrontations with Judge O'Grady where he regularly called her "a fucking idiot" and asked her "what the fuck is wrong with her," her fear of termination grew. (*Id.*, PageID 940.) While Boxill worked for the court while O'Grady was a judge, he did not have the unilateral authority to fire her, unless a majority of the judges on the court agreed. (*Id.*, PageID 1055; *see* VanDerKarr Dep. I, ECF No. 104, PageID 2126.) Boxill avers that her fear increased as time went on, even though she had made reports and complaints to the highest officials in the FCMC. (Boxill Decl. I at ¶¶ 24–27, ECF No. 95, PageID 1251–52.)

Judge VanDerKarr submitted a letter to Administrative Judge Brandt dated March 19, 2014, "to inform [him] on an ongoing situation involving Judge James O'Grady in that he has created undue stress and strain and exhibited bias and prejudice toward certain employees, most

4

specifically of the Specialized Dockets." (Pl. Exhibit 66, ECF No. 111-1, PageID 2491.) Judge VanDerKarr ended the letter with his "concern[] that if left unaddressed, Judge O'Grady's behavior may result in future litigation that could subject the Court to liability, possibly for the creation and continuation of a hostile work environment, and the payment of damages." (*Id*.; *see also* VanDerKarr Dep. II, ECF No. 105, PageID 2251, 2272–2278.)

Judge O'Grady submits evidence, disputing that he engaged in any such conduct. (*E.g.*, Glaeden Dep., ECF No. 97, PageID 1398; Whittier Decl. at ¶ 11, ECF No. 106-3; Frank Decl. at ¶ 5, ECF No. 106-6.) At this stage of the case, the Court is only deciding whether the Plaintiff has provided sworn testimony sufficient to support her claims.

In June 2014, Boxill began looking for employment elsewhere. (Boxill Dep., ECF No. 91, PageID 753.) That July, Boxill found a position in the Ohio Governor's Office. (*Id.* at PageID 753–55.) And in August 2014, Boxill resigned from her position at the FCMC. (*Id.* at PageID 753.) Boxill testified: "I left the court because I was tired of the sexual and vulgar comments that were made to me as an African-American woman, they were made to me in front of me, about me, and around me, by Judge O'Grady." (*Id.* at PageID 936.)

**B.** **Procedural Background**

Boxill filed suit on February 10, 2016. (ECF No. 1.) She subsequently filed an Amended Complaint on April 3, 2017. (ECF No. 37.) Boxill was joined by Teresa Barry in her suit, and brought various claims against Judges O'Grady, Graeden, Green, and Brandt, as well as Emily Shaw, and the Franklin County Municipal Court/State of Ohio. (Civil Cover Sheet, ECF No. 1-1.) On February 1, 2018, Teresa Barry and the Franklin County Municipal Court/State of Ohio were terminated from the case. (*See* ECF No. 49.) On March 30, 2018, with another Judge presiding, an Opinion and Order issued granting Defendants' Motion to Dismiss for Failure to

5

State a Claim, and the Clerk entered final judgment. (ECF Nos. 51, 52.) Boxill appealed. (*See* ECF No. 53.) The Sixth Circuit affirmed in part and reversed in part. *Boxill v. O'Grady*, 935 F.3d 510 (6th Cir. 2019). Specifically, it reversed with respect to the dismissal of Boxill's hostile work environment claims against Judge O'Grady. *Id*. at 521. The presiding Judge subsequently recused himself and the case was reassigned to this Court's docket. (ECF No. 62.) Discovery followed.

On June 19, 2020, Judge O'Grady filed a motion for summary judgment on Boxill's remaining claims that Judge O'Grady created a hostile work environment based on her gender and/or race. (ECF No. 107.) The motion is now fully briefed and ripe for review. (ECF Nos. 107, 113, 114.)

## II. LAW

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–

6

59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

**B.      42 U.S.C. § 1983**

Boxill filed her claims pursuant to 42 U.S.C. § 1983, which provides a remedy for "the deprivation of rights, privileges, or immunities secured by the Constitution and laws" with respect to actions taken by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. To prevail on a claim brought under § 1983, a plaintiff must prove (1) that she was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of law. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015). When suing an individual for a constitutional violation under § 1983, a plaintiff must demonstrate that the actor "'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

7

### III. ANALYSIS

Boxill brings her claims under the Equal Protection Clause of the United States Constitution. (Amend. Compl. at 9–10, ECF No. 37.) Specifically, Boxill contends that Judge O'Grady engaged in sex and race-based harassment creating a gender and race-based hostile work environment that ultimately lead to her constructive discharge. (*See* Resp. to Mot. for Summ. J. at 36, ECF No. 113.) Sex or race-based harassment claims brought through a § 1983 cause of action use the same test applied under Title VII. *Boxill*, 935 F.3d at 520. Judge O'Grady argues, as a preliminary matter, that (A) Boxill's claims are barred by the statute of limitations. He next argues that, even if the claims are not time-barred, (B) Boxill has failed to raise any genuine issue of material fact as to her hostile work environment claims and he is entitled to judgment as a matter of law.

**A.     Statute of Limitations**

Judge O'Grady contends that Ohio's two-year statute of limitations for a § 1983 action bars the Court from considering any of his alleged conduct that occurred prior to February 10, 2014. (Mot. for Summ. J. at 15, ECF No. 107.) Boxill asserts hostile work environment claims, which, as the Supreme Court has explained, "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *see also Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (extending the Supreme Court's *Morgan* ruling to § 1983 claims).

**1.     Timeliness of Sex-Based Hostile Work Environment Claim**

Regarding Boxill's sex-based discriminatory harassment allegations, Judge O'Grady's conduct predating February 10, 2014 is part of the same purported unlawful employment practice

as his conduct after that date; it is all part of the same alleged hostile work environment based on sex.  Boxill references specific examples of Judge O'Grady's alleged conduct that occurred before February 10, 2014, but she also maintains that these were just examples and that the conduct occurred frequently after that date as is shown by her deposition testimony set out above, where she testifies that Judge O'Grady used the same sexually abusive language while he was a judge as he did while he was a bailiff.  (Boxill Dep. at PageID 941–42, 1012–13, ECF No. 91.)  Boxill testified that when she left the court in the summer of 2014, it was because she was "tired of the sexual and vulgar comments" allegedly made by Judge O'Grady.  (*Id.* at PageID 936.)  A reasonable jury could credit this testimony, triggering the continuing course of conduct exception to the statute of limitations.  Thus, Boxill's sex-based hostile work environment claim is not barred by the statute of limitations.  Defendant is, therefore, not entitled to summary judgment on this basis.

        **2.**     **Timeliness of Race-Based Hostile Work Environment Claim**

Regarding Boxill's race-based discriminatory harassment allegations, the Court finds that the continuing course of conduct exception to the statute of limitations does not apply.  Boxill has not presented evidence that Judge O'Grady made any racial comments while on the bench, either before or after February 10, 2014.  Boxill has presented evidence that Judge O'Grady harassed her, that he berated and demeaned her, and that she believes that he did so because of her race.  However, the only racial comments that Boxill alleges O'Grady made took place in 2004, while O'Grady was a bailiff.  There is no evidence of Judge O'Grady making racial comments to Boxill or anyone else once he took the bench, and no evidence of him making racial comments after February 10, 2014.  As such, the racial comments do not constitute a continuing course of conduct, and that exception to the statute of limitations does not apply.

Accordingly, Judge O'Grady is entitled to summary judgment in his favor on Boxill's race-based harassment claim because it is time-barred by the applicable statute of limitations.

**B.      Sex-Based Hostile Work Environment Claim**

Boxill asserts that Judge O'Grady engaged in sex-based harassment creating a hostile work environment. (*See* Resp. to Mot. for Summ. J. at 36, ECF No. 113.) Discriminatory harassment encompasses "discriminatory intimidation, ridicule, and insult," among other objectionable behaviors. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). "[H]arassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus against women satisfies the 'based on sex' requirement." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999). That is, "the law recognizes that non-sexual conduct may be illegally sex-based where it evinces 'anti-female animus, and therefore could be found to have contributed significantly to the hostile environment.'" *Id*. The Sixth Circuit has made "clear that the conduct underlying a sexual harassment claim need not be overtly sexual in nature. . . . *Any* unequal treatment of an employee *that would not occur but for the employee's gender* may, if sufficiently severe or pervasive under the *Harris* standard, constitute a hostile environment in violation of Title VII." *Id*. (emphasis in original).

Discriminatory harassment creates a hostile work environment when it is "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris*, 510 U.S. at 21 (quoting *Meritor Savings Bank*, 477 U.S. at 67); *see Hickman v. Laskodi*, 45 F. App'x 451, 454 (6th Cir. 2002). There is both an objective and a subjective element to the existence of a hostile work environment: "the conduct must be severe enough to create an environment that a reasonable person would find hostile or abusive and the

10

victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

In determining whether conduct is severe or pervasive enough to constitute a hostile work environment, a court should consider, among other factors, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hickman*, 45 F. App'x at 454 (quoting *Bowman*, 220 F.3d at 463) (internal quotation marks omitted). Whether a hostile work environment exists is a determination that must be made based on the totality of the circumstances. *Harris*, 510 U.S. at 23; *Williams*, 187 F.3d at 562.

To survive summary judgment, Boxill must show or raise a genuine issue of material fact as to whether "(1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [her protected status], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment, and (5) the defendant knew or should have known about the harassment and failed to act." *Id.* (quoting *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013)). Moving for summary judgment, Judge O'Grady submits that there is insufficient evidence to create a jury question on (1) the third element and (2) the fourth element of his claim. (Mot. for Summ. J. at 21, ECF No. 107.)[2]

### 1. Third Element: Harassment Based on Sex

According to Boxill, Judge O'Grady harassed her based on her sex and mistreated and harassed her and other women in her presence or of which she was aware, and in so doing created

---

[2] In his motion, Judge O'Grady also argues that when he was a bailiff, he had no supervisory authority over Boxill and therefore could not have acted under color of law. Boxill responded at length with the argument that Defendant is not entitled to qualified immunity. In his reply, Judge O'Grady clarified that he does not take the position that he is entitled to qualified immunity. The Court, therefore, need not address qualified immunity.

a sex-based hostile work environment that ultimately lead to her constructive discharge. Boxill provides evidence that Judge O'Grady regularly: (1) called women "whore," including a defendant in open court, (2) referred to women as "smoking hot," (3) described a female defense attorney as "a freak" and "a partier" who "loved to sleep around," (4) stated that he would consider sleeping with a particular bailiff, (5) told Boxill "you disgust me" in reference to her attire, (6) regularly used foul and confrontational language to Boxill and other women but not toward men, and (7) treated women who appeared before him in an abusive manner but did not treat men the same. Boxill testifies that this conduct occurred "frequently." (Boxill Dep., ECF No. 91, PageID 941–42.) She further testifies that this conduct caused her to leave the court, which she alleges was a constructive discharge. (*Id.* at PageID 936.) This evidence, while not all overtly sex-based, is directed at women and a reasonable inference could be made that it was, or was not, motived by discriminatory animus against women, which "satisfies the 'based on sex' requirement" at this juncture. *Williams*, 187 F.3d at 565.

Judge O'Grady offers evidence from several men and women who worked closely with him who testified that they do not recall him making sexist remarks. (*E.g.*, Glaeden Dep., ECF No. 97, PageID 1398; Whittier Decl. at ¶ 11, ECF No. 106-3; Frank Decl. at ¶ 5, ECF No. 106-6.)

This Court may not make credibility determinations at summary judgment. Thus, this evidence presents a sufficient disagreement to require submission to a jury. Accordingly, Boxill has met her burden of raising a genuine issue of material fact as to the third element of her sex-based hostile work environment claim.

    **2.**     **Fourth Element: Sufficiently Severe or Pervasive Harassment that Alters the Conditions of Employment and Creates an Abusive Work Environment**

Judge O'Grady next contends that his alleged conduct was not sufficiently severe or pervasive to create a hostile work environment, the fourth element of a sex-based hostile work

12

environment claim. (*See* Mot. for Summ. J. at 20–21). Further, Judge O'Grady submits that because Boxill brought her claims via § 1983 for alleged violations of the Equal Protection Clause, she must show, in addition to the conduct being subjectively and objectively abusive, that Judge O'Grady intended to harass her. (Mot. for Summ. J. at 16, ECF No. 107 (citing *King v. Bd. of Regents of Univ. of Wisconsin Sys.*, 898 F.2d 533, 537 (7th Cir. 1990).) In the Sixth Circuit, however, a plaintiff needs to show only that the conduct was subjectively and objectively abusive. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

As to the subjective prong, "the victim must 'subjectively perceive the environment to be abusive.'" *Williams*, 187 F.3d at 566 (quoting *Harris*, 510 U.S. at 21). Boxill claims that she regarded Judge O'Grady's conduct as abusive and harassing. She testified that she found it so abusive that she sought and found another job. The testimony submitted by Boxill, and set out above, sufficiently supports her subjective belief to defeat a motion for summary judgement.

O'Grady contends that Boxill's testimony is insincere, which is reflected in her reaction to the comments that "do not reflect intimidation or powerlessness on her part." (Mot. at 21, ECF No. 21) (citing as examples Boxill's responses to Judge O'Grady "you're disgusting;" "that's ridiculous;" "you're making an assumption;" "that's really messed up"). He concludes that, "although this Court must view the evidence in the light most favorable to Boxill, the testimony of those Boxill identified as present during these alleged incidents shows, at a minimum, that they either did not hear what Boxill now recounts or that they were not offended." (Mot. at 22, ECF No. 107.) Again, however, the credibility of witnesses is the exclusive province of the jury and cannot be resolved by this Court on motion.

With regard to the objective prong of the hostile work environment inquiry, the evidence before the Court, if believed, does not reflect a mere offensive utterance. Instead, Boxill testified

13

that the conduct was frequent, commonplace, that is was severe in that it used extremely derogative terms about women, such as "whore." She provided evidence that Judge O'Grady spoke about the sexual exploits of female attorneys. An objective observer could find that it is humiliating to hear women referred to in these terms, that it was embarrassing to hear Judge O'Grady's thoughts about female attorneys and his opinion of their sexual conduct, that the frequent foul language was abusive, and that all of this could unreasonably interfere with an employee's work performance. The evidence of comments Judge O'Grady made to and about other women but not directly to Boxill are also relevant to this inquiry. *See Warf v. U.S. Dep't of Veterans Affairs,* 713 F.3d 874 (6th Cir.2013) (courts dealing with the fourth element's objective test "may also consider general sexual harassment in the workplace.") Boxill's testimony is supported by a co-worker, who avers that Judge O'Grady "was demeaning, condescending to women, and would question a woman's ability." (Schmidt Decl. at ¶ 15, ECF No. 110-2.) Another coworker filed suit against Judge O'Grady based on sexual harassment and Boxill knew about the bases of the suit. *Barry v. O'Grady*, 2:14-CV-2693, 2017 WL 1234048 (S.D. Ohio Mar. 31, 2017) *aff'd* 895 F.3d 440 (6th Cir. 2018). And, Judge VanDerKarr was concerned about Judge O'Grady's behavior such that he wrote a letter about potential hostile work environment liability. (Pl. Exhibit 66, ECF No. 111-1, PageID 2491.) Viewing this evidence in the light most favorable to Boxill, the Court finds that she has raised a genuine issue of material fact as to whether an objectively reasonable person would find the conduct abusive.

  Accordingly, Boxill has met her burden of raising genuine issues of material fact as to whether the harassment was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment. Thus, Defendant is not entitled to summary judgment based on this element of Boxill's prima facie case.

### 3. Constructive Discharge

A plaintiff's assertion of constructive discharge "stems from, and can be regarded as an aggravated case of, sexual harassment or hostile work environment." *Pa. State Police v. Suders*, 542 U.S. 129, 146 (2004) (explaining that, in addition to the existence of a hostile work environment, a claim of constructive discharge "entails something more": evidence that "working conditions [were] so intolerable that a reasonable person would have felt compelled to resign"). "Constructive discharge from employment is not itself a cause of action. First there must exist an underlying cause of action for employment discrimination." *Keaton v. Ohio*, No. C2-00-1248, 2002 WL 1580567, at *12 (S.D. Ohio June 3, 2002); *see also Pa. State Police*, 542 U.S. at 149 ("Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case.").

Here, there is an underlying cause of action because the Court finds *supra* that Boxill's sex-based hostile work environment claim must be decided by a jury. Thus, the Court reviews her claim that she was constructively discharged.

"A constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). The Sixth Circuit has also indicated that constructive discharge can take two different forms:

> We are ordinarily faced with a situation in which the employee only alleges that she resigned because of *discriminatory harassment,* and in such cases, we require the plaintiff to demonstrate a discriminatory work environment even more egregious than the high standard for hostile work environment.
>
> But that is not the only method of demonstrating constructive discharge. *When an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge.*

15

*Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014) (emphasis added by Sixth Circuit) (adopting the standard set out in *E.E.O.C. v. University of Chicago Hospitals,* 276 F.3d 326, 331–32 (7th Cir. 2002)).

In the case *sub judice*, in addition to the alleged harassment set forth above, Boxill provides evidence that Judge O'Grady's behavior and conduct interfered with her ability to do her job, causing her increasing anxiety and emotional distress. (Pl's Mem. in Opp. at 42, ECF No. 113) (citing Schmidt Dec., ¶21, ECF No. 110-2, PageID 2458; Thrasher Dec., ¶¶10-12, ECF No. 110-3, PageID 2461). Judge VanDerKarr testified that Boxill brought such concerns to his attention, specifically that the events were occurring because of her gender. (VanDerKarr II Dep., ECF No. 105, PageID 2242–43.) Additionally, Boxill testified that Judge VanDerKarr informed her that Judge O'Grady wanted her fired. (Boxill Dep., ECF No. 91, PageID 794.) VanDerKarr confirmed this in his own testimony. (VanDerKarr II Dep., ECF No. 105, PageID 2203.)

The Court finds that, when viewing the totality of the circumstances in the light most favorable to Boxill, and making all justifiable inferences in her favor, a jury could find, or not find, that she was constructively discharged.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment, (ECF No. 107), is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED**.

3/24/2021                                            s/Edmund A. Sargus, Jr.
**DATED**                                       **EDMUND A. SARGUS, JR.**
                                                  **UNITED STATES DISTRICT JUDGE**